**No. 24-1928**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

MARILYN HERNANDEZ, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

BLOOMINGDALE'S, LLC and BLOOMINGDALES.COM, LLC,

*Defendants-Appellees.*

---

On appeal from an Order and Judgment by the
United States District Court for the District of Maryland
Case No. 1:23-cv-00519, Hon. Lydia Kay Griggsby

---

## BRIEF OF APPELLANT MARILYN HERNANDEZ

---

James J. Pizzirusso
Nicholas U. Murphy
HAUSFELD LLP
888 16th Street N.W., Ste. 300
Washington, DC 20006
202-540-7200

Steven M. Nathan
HAUSFELD LLP
33 Whitehall Street, 14th Flr.
New York, NY 10004
646-357-1100

Jonathan M. Jagher
FREED KANNER LONDON &
MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
610-234-6770

Jamisen A. Etzel
LYNCH CARPENTER, LLP
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
412-322-9243

*Attorneys for Plaintiff-Appellant Marilyn Hernandez*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1928__       Caption: __Hernandez v. Bloomingdale's, LLC and Bloomingdales.com, LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Marilyn Hernandez__
(name of party/amicus)

_____

who is _____the Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?                              ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
     If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?            ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jamisen A. Etzel                    Date:          3/7/25

Counsel for: Appellant Marilyn Hernandez

Print to PDF for Filing

## **TABLE OF CONTENTS**

INTRODUCTION.......................................................................1

STATEMENT OF JURISDICTION..........................................5

I.   District Court Jurisdiction ...............................................5

II. Appellate Jurisdiction ......................................................5

ISSUE PRESENTED ...............................................................6

STATEMENT OF THE CASE .................................................7

SUMMARY OF ARGUMENT................................................13

STANDARD OF REVIEW.....................................................17

ARGUMENT ...........................................................................18

I.   Specific personal jurisdiction over Bloomingdale's is proper here because Bloomingdale's extensively and purposefully availed itself of Maryland, and Hernandez's claims arise from Bloomingdale's in-forum activities.........................................18

    A.   Bloomingdale's purposely availed itself of the privilege of conducting business in Maryland.............................................20

       1.   Bloomingdale's internet-based availment of Maryland satisfies this Court's test in *ALS Scan*, even if Bloomingdale's department store location in Maryland were ignored........................................25

    B.   Hernandez's claims arise directly out of Bloomingdale's intentional, regular business activities in Maryland. .............31

II. The district court misapplied this Court's decision in *Fidrych* and erred in relying on a non-binding First Circuit case that was wrongly decided.......................................................37

A.  The district misapplied *Fidrych*, ignoring that *Fidrych* involved claims arising exclusively out of events in Italy, not the forum state. ................................................... 38

B.  The First Circuit's holding in *Rosenthal* that Bloomingdale's did not purposefully avail itself of Massachusetts should not be imported to this case ................ 42

CONCLUSION ........................................................ 47

STATEMENT REGARDING ORAL ARGUMENT ................................ 47

# TABLE OF AUTHORITIES

**Cases**                                                          **Pages**

*ALS Scan v. Digital Service Consultants, Inc.*,
293 F.3d 707 (4th Cir. 2002) ....................................................... passim

*AMB Media, LLC v. OneMB, LLC*,
2024 WL 2052151 (6th Cir. May 8, 2024) ................................... 27, 30

*BohoBlu, LLC v. BluBoho.com Inc.*,
2024 WL 1364755 (W.D.N.C. Mar. 1, 2024) ........................... 23, 33, 41

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,
San Francisco Cty.*, 582 U.S. 255 (2017) ............................................ 32

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .............................................................................. 20

*Calder v. Jones*,
465 U.S. 783 (1984) .............................................................................. 44

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003) .......................................................... 18, 26

*Center for Community Self-Help v. Self-Financial, Inc.*,
2023 WL 1779831 (M.D.N.C. Feb. 6, 2023) ................................... 28, 41

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India*,
551 F.3d 285 (4th Cir. 2009) ................................................................ 31

*Christian Science Bd. of Dirs. of the First Church of Christ,
Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001) ................................. 17

*Collier v. Land & Sea Restaurant Co., LLC*,
2014 WL 5254916 (W.D. Va. Oct. 15, 2014) .................................. 23, 31

*Fidrych v. Marriott Int'l., Inc.*,
952 F.3d 124 (4th Cir. 2020) ....................................................... passim

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
  592 U.S. 351 (2021)..................................................... passim

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)........................................... 21, 35, 44, 45

*Lolavar v. de Santibanes*,
  430 F.3d 221 (4th Cir. 2005)................................................17

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013)......................... 28, 30, 33, 41

*McNair v. Lend Lease Trucks, Inc.*,
  62 F.3d 651 (4th Cir. 1995).................................................17

*Mylan Labs., Inc. v. Akzo, N.V.*,
  2 F.3d 56 (4th Cir. 1993)......................................................18

*NBA Properties, Inc. v. HANWJH*,
  46 F.4th 614 (7th Cir. 2022) .........................................30, 41

*Perdue Foods LLC v. BRF S.A.*,
  814 F.3d 185 (4th Cir. 2016).......................................19, 20, 21

*Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*,
  831 F.2d 522 (4th Cir. 1987)..........................................19, 27

*Plixer Int'l v. Scrutinizer GmbH*,
  905 F.3d 1 (1st Cir. 2018) ....................................................25

*Rosenthal v. Bloomingdales.com, LLC*,
  101 F.4th 90 (1st Cir. 2024)........................................ passim

*Savvy Rest, Inc. v. Sleeping Organic, LLC*,
  2019 WL 1435838 (W.D. Va. Mar. 29, 2019)..........................29, 31, 34

*SEC v. Receiver for Rex Ventures Grp., LLC*,
  730 F. App'x 133 (4th Cir. 2018)........................................18

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P. Ltd.*,
  911 F.3d 192 (4th Cir. 2018)..............................................46

iv

*Toys "R" Us, Inc. v. Step Two S.A.*,
  318 F.3d 446 (3d. Cir. 2003) ........................................ 31, 41

*UMG Recordings, Inc. v. Kurbanov*,
  963 F.3d 344 (4th Cir. 2020) ........................................ passim

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................ 25

*Young v. New Haven*,
  *Advoc.*, 315 F.3d 256 (4th Cir. 2002) ............................ 44

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997) .............................. 25

## **Statutes**

28 U.S.C. § 1291 .................................................................. 5

28 U.S.C. § 1332(d)(2)(A) .................................................. 5

28 U.S.C. § 2107 .................................................................. 5

Md. Code Ann. § 10-401 ...................................................... 2

## **Rules**

Fed. R. App. P. 4 .................................................................. 5

Fed. R. App. P. 32(f) ........................................................... 49

Fed. R. Civ. P. 12(b)(2) ...................................................... 17

Fed. R. Civ. P. 58 ................................................................ 5

## INTRODUCTION

While in Maryland, Plaintiff-Appellant Marilyn Hernandez ("Hernandez") visited the online retail website operated by Defendants-Appellees Bloomingdale's LLC and Bloomingdales.com, LLC (collectively, "Bloomingdale's"), to view products and merchandise she was interested in purchasing from Bloomingdale's. Hernandez's patronage of Bloomingdales.com was foreseeable and intended by Bloomingdale's, which specifically developed a market for its goods and services in Maryland by operating a department store there and fully integrating its website to generate in-person and online sales there.

Without Hernandez's knowledge and consent, Bloomingdale's contracted with and allowed third parties to intercept her every interaction with Bloomingdales.com using a secretly embedded software code ("spyware") that began running on her computer in Maryland from the moment she entered Bloomingdales.com. Using this spyware, all of the sensitive personal information Hernandez entered on Bloomingdales.com while in Maryland was instantly intercepted by undisclosed third parties without Hernandez's consent.

Hernandez asserted two claims against Bloomingdale's: Count I
for procuring an illegal wiretap in violation of the Maryland
Wiretapping and Electronic Surveillance Act, Md. Code Ann. § 10-401,
*et seq.*, ("MWESA"), and Count II for intrusion upon seclusion under
Maryland common law.

Without reaching the merits of Hernandez's claims, the district
court dismissed the case on the sole basis that personal jurisdiction did
not exist over Bloomingdale's. Hernandez appeals the dismissal because
the district court does have personal jurisdiction over Bloomingdale's in
the District of Maryland for Hernandez's claims, which arise out of
Bloomingdale's knowing and intentional actions in Maryland as part of
its regular business operations there.

Specifically, the district court erred because both prongs of the
test for specific personal jurisdiction at issue here are readily
established by Hernandez's factual allegations. First, Bloomingdale's
purposefully availed itself of Maryland by operating a department store
there, continuously selling goods and services in Maryland—both at its
physical store and through direct online sales, using an interactive
website to facilitate those transactions specifically in Maryland, and by

sending spyware to Marylanders' computers so Bloomingdale's could profit and obtain commercially valuable information from them.

Second, Hernandez's claims arise directly from, and relate to, the contacts Bloomingdale's knowingly and intentionally established between itself and Maryland. The claim-causing events took place within the physical borders of Maryland, not by happenstance, but as a foreseeable result of Bloomingdale's intentional actions directed into the forum. In the course of its regular, revenue-generating operations in Maryland, Bloomingdale's transmitted spyware to Hernandez's computer in Maryland where it wiretapped her communications. It is that deliberate activity by Bloomingdale's within Maryland that gave rise to Hernandez's claims.

The district court erred below when it failed to cogently apply the simple jurisdiction-related facts to these two straightforward prongs. Instead, the district court misapplied precedents such as *Fidrych v. Marriott Int'l., Inc.*, 952 F.3d 124 (4th Cir. 2020), where this Court held that the second, "relatedness" prong was not met because the plaintiff's claims were about a physical injury suffered in Italy, and the plaintiff

failed to causally connect the occurrence of that injury to any activity by the defendant in the forum state of South Carolina.

*Fidrych* is readily distinguishable from Hernandez's claims. The critical facts here weigh entirely in the other direction because Hernandez's claims are about wiretapping activity Bloomingdale's deliberately initiated that occurred *within Maryland*, where Bloomingdale's knowingly and intentionally chose to enter, and where it maintains robust and continuous contacts. Those voluntary contacts fairly put Bloomingdale's on notice it could face claims in Maryland relating to its normal business activities, so the district court erred in ruling that Bloomingdale's due process rights would be violated by making it answer for these Maryland-centered claims in Maryland.

For these reasons, and as discussed in more detail below, this Court should reverse the district court's dismissal of Hernandez's claims.

# STATEMENT OF JURISDICTION

## I.    District Court Jurisdiction

The district court has diversity jurisdiction over Plaintiff-Appellant Hernandez's claims under 28 U.S.C. § 1332(d)(2)(A), because Hernandez is a citizen of Maryland, Defendants-Appellees Bloomingdale's, LLC and Bloomingdales.com are both citizens of Ohio and New York, this is a class action involving more than 100 members in the proposed class, and the aggregate amount in controversy exceeds $5,000,000. JA8.

## II.    Appellate Jurisdiction

This Court has appellate jurisdiction under 28 U.S.C. § 1291 to review the district court's order and final judgment, both entered on July 25, 2024, which dismissed Hernandez's complaint for lack of personal jurisdiction.

Hernandez filed her notice of appeal on August 26, 2024, making her appeal timely under 28 U.S.C. § 2107, Fed. R. App. P. 4, and Fed. R. Civ. P. 58. JA54.

## ISSUE PRESENTED

1.      Are the requirements for specific personal jurisdiction satisfied when the defendant voluntarily and continuously engages in business in the forum by operating a physical department store and marketing and selling directly to forum residents through a website, and where the claims at issue are about the defendant's intentional transmission of wiretapping software onto computers physically located in the forum and the consequent interception of a forum-resident plaintiff's communications while she was in the forum?

Suggested answer: **Yes.**

## STATEMENT OF THE CASE

Bloomingdale's is a fashion retailer, offering men's and women's apparel, accessories, shoes, and more, both online, through Bloomingdales.com, and in brick-and-mortar locations. JA21. Bloomingdale's has brick-and-mortar store locations in sixteen states, including Maryland.[1] JA8. Bloomingdale's knows that many of its customers visit and interact with Bloomingdales.com while they are physically present in Maryland. JA10.

Bloomingdales.com allows consumers such as Plaintiff-Appellant Hernandez and putative Maryland class members to peruse products, place orders, and pay for merchandise and services directly on its website and from its brick-and-mortar location in Maryland as part of Bloomingdale's regular course of business. JA10–11. Bloomingdale's derives substantial revenue from online purchases made by thousands of residents of Maryland and from in-store purchases at its brick-and-mortar location in Maryland. JA10–11.

---

[1] *All Bloomingdale's Stores*, BLOOMINGDALE'S, https://www.bloomingdales.com/stores/browse/ (last visited Feb. 26, 2025). Hernandez's complaint cited to a similar link. JA11.

Bloomingdale's brick-and-mortar store in Maryland and Bloomingdales.com are fully integrated with each other, such that consumers can use the website to locate the physical store in Maryland, book stylist appointments there, order products from the website for pick-up at the store, and buy products online that they first saw at the store, or vice-versa. JA10–11, JA21.

Bloomingdale's knew and intended that its website would facilitate regular and continuous sales specifically in Maryland because it configured the website to allow people to identify the Bloomingdale's in Maryland as their nearest location, and provide directions to that store; added a feature for visitors to check whether a product is presently in stock at the Maryland store; designed the website to process orders of products and appointments for services for fulfillment at the Maryland store; and built the website as a sales platform for direct sales of goods to be delivered to Maryland addresses. JA10. This renders the brick-and-mortar aspect of Bloomingdale's business model inseparable from its online services. JA10–11, JA21. Thus, Bloomingdale's voluntarily established extensive, interlaced, and

continuous streams of commerce in Maryland, in both the physical

world and online.

Unbeknownst to customers who visit Bloomingdales.com,

Bloomingdale's intentionally and secretly procures and embeds spyware

from third-party Session Replay Providers to intercept and record every

interaction with Bloomingdales.com. JA6, JA11, JA15–16, JA22–27. At

Bloomingdale's direction, this spyware surreptitiously intercepts

website users' interactions and communications with the website and

discloses them to the third-party Session Replay Provider. JA22–27.

This spyware records each individual's private browsing session and

enables Bloomingdale's and the Session Replay Providers to view and

playback individuals' entire interactions with the website. JA5–6. The

spyware even records information users ultimately chose not to submit,

such as partial text field information that users typed but did not send.

JA7.

Hernandez's allegations explain that Bloomingdale's transmits

the spyware onto the website visitor's computing device, specifically by

instructing the visitor's browser application to send immediate reports

of the visitor's inputs ("event data") as they are made, directly from the

visitor's device to a third-party server. JA16; *see also* JA5, JA11–12, JA22, JA35.

Additionally, the spyware tracks when users input personally identifying information, allowing Bloomingdale's to identify website sessions by the user, and then creates a unique "fingerprint" for that user. JA18–19. This fingerprint allows Bloomingdale's and the Session Replay Providers to track that individual's activity across other websites that employ this spyware, even if the user took steps to remain anonymous. JA18–19.

While they were being recorded on Bloomingdales.com, Hernandez and putative class members were never asked for, nor did they ever provide, their consent for Bloomingdale's to utilize this spyware to permit an undisclosed third-party Session Replay Provider to record them. JA6, JA16–17, JA27–28. Moreover, the fact that the interception of Hernandez's and putative class members' communications began immediately upon visiting Bloomingdales.com renders Bloomingdale's Privacy Policy—buried at the bottom of the page in an inconspicuous font and color—ineffectual for informed consent. JA27–28, JA34. Bloomingdale's, through its undisclosed third-party Session Replay

Providers, surreptitiously deploys this spyware on Bloomingdales.com for no purpose other than their own profit. JA6–7, JA11, JA38.

Hernandez's and putative Maryland class members' communications were intercepted while in Maryland, after Bloomingdale's transmitted the wiretapping spyware onto their computer browsers in the forum. JA8–12, JA23 JA28 (limiting the proposed class to "persons *in Maryland* whose Website Communications were captured…") (emphasis added); JA31 ("Plaintiff and Class members visited and interacted with the Bloomingdale's website from their personal computers and/or mobile devices while in Maryland.").

Hernandez brought this class action against Bloomingdale's for wiretapping her communications in violation of her privacy rights under Maryland law, both on her own behalf and on behalf of a putative class of similarly situated Maryland residents whose Maryland-based communications with the Bloomingdale's website were unlawfully intercepted and recorded by spyware. JA8, JA28, JA31–38.

Bloomingdale's moved to dismiss Hernandez's original complaint for lack of personal jurisdiction and failure to state a claim, and in response Hernandez amended her complaint. JA3. Bloomingdale's

11

again moved to dismiss, and, in an order dated July 25, 2024, the

district court dismissed the amended complaint on the sole basis that

the court believed it could not exercise specific personal jurisdiction over

Bloomingdale's consistent with the constitutional limits of due process.

JA41–52. Specifically, the district court concluded that "Plaintiff has

not shown that her claims in this matter arise out of the Defendants'

activities in Maryland. Plaintiff also fails to allege facts to show that

the Defendants purposefully availed themselves of the privilege of

conducting activities in Maryland." JA47.

The district court entered a final order of dismissal on July 25,

2024, JA53, and Hernandez timely filed her notice of appeal on August

26, 2024, JA54.

12

## SUMMARY OF ARGUMENT

The district court based its dismissal of Hernandez's Maryland Information Privacy Act and Maryland common law invasion of privacy claims on a finding that the court could not exercise personal jurisdiction over Bloomingdale's. JA47–52. To reach this conclusion, the district court ignored relevant facts alleged in Hernandez's amended complaint, failed to properly analyze the two prongs that drive the specific personal jurisdiction test—purposeful availment and relatedness—and incorrectly applied the holdings of cases with categorically different fact patterns. This was error.

With respect to the purposeful availment prong, Bloomingdale's operates a brick-and-mortar location in Maryland and intentionally and knowingly caters to Maryland residents online via its highly-interactive website, Bloomingdales.com. When looking at the types of actions this Court considers in assessing purposeful availment, such as maintaining a physical place of business, owning or leasing property, employment of agents, conducting sales, entering contracts, and making in-person contact with forum residents, Bloomingdale's knowingly and intentionally checked every box, and continues to do so.

13

Moving to the relatedness prong, Hernandez's claims also arise out of Bloomingdale's voluntary activities in Maryland because her claims are *entirely* about Bloomingdale's intentional contacts with her while she was in Maryland. Bloomingdale's deliberately transmitted spyware onto Hernandez's computer in Maryland, where it intercepted her communications while she was shopping on Bloomingdales.com. The invasion of her privacy rights while in Maryland is the basis of her two causes of action under Maryland law. This strong connection between the subject matter of Hernandez's claims and Bloomingdale's purposeful activity within and directed into Maryland fully satisfies the relatedness prong, to a greater degree than the Supreme Court's precedents require.

The district court erred by failing to analyze the two prongs appropriately with reference to the relevant facts and factors. The district court's analysis conflated the prongs and drew upon precedents that are either fully distinguishable on the facts or were not addressing the same prongs in the same context as the district court.

For instance, on the first prong, instead of correctly finding that Bloomingdale's purposefully availed itself of Maryland by, among other

14

things, operating a department store in the forum and making continuous in-person and internet sales in the forum, the district court ignored that evidence of availment and approached this prong as if the accessibility of Bloomingdales.com was Bloomingdale's *only* contact with Maryland. JA45. But Bloomingdale's demonstrated its intention to do business in Maryland via its operation of a department store there and intentional interlacing of Bloomingdales.com to drive transactions with Maryland consumers in Maryland, so the district court's treatment of the availment prong as limited to the accessibility of Bloomingdales.com was simply off base.

On the relatedness prong, the district court again ignored the most salient facts, which were that Bloomingdale's wiretapped Hernandez's communications *in Maryland* by intentionally transmitting spyware onto her device *in Maryland*, meaning that the activity that gave rise to Hernandez's claim occurred within the territorial borders of the forum. Instead, the district court relied heavily on the holding in *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020), JA51, but that case is categorically different because that plaintiff was attempting to sue Marriott in South Carolina for events

15

that occurred exclusively *in Italy*. That obvious deficiency on the relatedness prong is not present here, because Hernandez's claims are about what Bloomingdale's did to her in Maryland, the forum. The fully-formed nexus between Hernandez, Bloomingdale's, Maryland, and Hernandez's claims satisfies this prong.

This is a textbook example of a proper case for specific personal jurisdiction: Bloomingdale's engages in continuous business in Maryland and Hernandez's claims arise directly from and relate to those knowing and intentional activities in the forum. The district court's failure to properly differentiate relevant facts and apply them using this Court's precedents concerning the exercise of specific jurisdiction was an error of law, and this Court should therefore reverse the dismissal of Hernandez's claims.

16

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's dismissal of Hernandez's claims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of specific personal jurisdiction. *See Lolavar v. de Santibanes*, 430 F.3d 221, 224 (4th Cir. 2005) ("We review *de novo* a district court's dismissal for lack of personal jurisdiction.") (citing *Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)).

The Court is not bound by the district court's reasoning but, rather, is free to rule based on any rationale made manifest by the record. *See McNair v. Lend Lease Trucks, Inc.*, 62 F.3d 651, 654 (4th Cir. 1995), *on reh'g en banc*, 95 F.3d 325 (4th Cir. 1996) (explaining that *de novo* review "means on the full record properly before the district court, and independently of the district court's particular legal reasoning or evidentiary assessment.").

## ARGUMENT

**I.  Specific personal jurisdiction over Bloomingdale's is proper here because Bloomingdale's extensively and purposefully availed itself of Maryland, and Hernandez's claims arise from Bloomingdale's in-forum activities.**

As this Court has previously explained, "when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *see also SEC v. Receiver for Rex Ventures Grp., LLC*, 730 F. App'x 133, 137 (4th Cir. 2018) (holding that the prima facie standard applies when no evidentiary hearing is conducted). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs*, 2 F.3d at 60.

A district court may exercise personal jurisdiction over a nonresident defendant if: (1) the forum state's longarm statute confers jurisdiction over the defendant; and (2) the exercise of jurisdiction comports with constitutional due process requirements. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.

2003). This Court has previously observed that "[t]he reach of Maryland's long-arm statute is coextensive with the reach of the Due Process Clause of the United States Constitution, so the 'statutory inquiry merges with the constitutional examination.'" *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citation omitted).

The exercise of specific personal jurisdiction is proper under the Due Process Clause when a defendant takes "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State," and where the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *See Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021) (citations and quotation marks omitted). "[I]t is not necessary that the defendant ever actually enter the forum State's territory; so long as the defendant has purposefully directed his activities toward the forum State, and the litigation arises from those activities, due process is satisfied." *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987).

To establish specific personal jurisdiction here, Hernandez must therefore make a prima facie showing that: (1) Bloomingdale's

19

"purposefully availed itself of the privilege of conducting activities in [Maryland]"; (2) her "claims arise out of those activities directed at [Maryland]"; and (3) "the exercise of personal jurisdiction would be constitutionally reasonable." *Ford Motor*, 592 U.S. at 359 (citation omitted).

Because Bloomingdale's only challenged Hernandez's ability to satisfy the first two factors,[2] the district court did not address the third factor in its analysis. *See generally* JA47–52. With respect to the first two factors, Hernandez readily established a prima facie case of personal jurisdiction over Bloomingdale's here.

## A. Bloomingdale's purposely availed itself of the privilege of conducting business in Maryland.

"For a court to have specific personal jurisdiction over a defendant, the defendant must have 'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" *Perdue Foods*, 814 F.3d at 188 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). This first-

---

[2] *See* Defs.' Mem. in Supp. of Mot. to Dismiss Am. Compl., ECF No. 27-1 at 13 n.7 (D. Md.) ("Since Plaintiff fails to satisfy the first two elements of the constitutional due process test, the Court need not separately address the third element.").

20

prong requirement is easily satisfied when a defendant "continuously and deliberately" exploits a market for its goods or services in the forum as "part of its general business." *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–81 (1984).

This Court has identified several nonexclusive factors relevant to analyzing this prong, such as: whether the defendant maintains offices or agents in the forum state; owns or leases property in the forum state; reached into the forum state to solicit or initiate business; deliberately engaged in significant or long-term business activities in the forum state; or made in-person contact with a resident of the forum in the forum state regarding a business relationship. *See Perdue Foods*, 814 F.3d at 189.

Bloomingdale's has done all of these things in Maryland. It operates a brick-and-mortar Bloomingdale's store in Maryland. JA10–11. This obviously necessitates owning or leasing the premises in Maryland, employing staff in Maryland, owning or leasing equipment such as display racks, cash registers, and signage in Maryland, and shipping inventory merchandise into Maryland. These are not random, fortuitous, or attenuated contacts with Maryland; they are prime

21

examples of acts of purposeful availment by a corporation seeking to do business in the Maryland luxury consumer goods retail market.

Hernandez further alleged that Bloomingdale's continuously sells goods and services in Maryland, through both its physical department store and through its website. JA10–11. Bloomingdales.com is fully integrated with Bloomingdale's physical presence in Maryland because, in addition to serving as a standalone platform for ordering products for delivery in Maryland, Bloomingdales.com can be used to order goods for fulfilment at the Maryland store, to check inventory, and to book appointments with stylists at the Maryland store. JA10–11.

These contacts far exceed the defendant's contacts with Virginia in *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020). In that case, this Court found specific jurisdiction appropriate over a Russian website operator, despite the fact the defendant had no physical connections to Virginia and made no direct sales in Virginia:

> Essentially all of the work that Kurbanov has performed on the Websites has been performed in Russia, and he has never performed any work on the Websites from within the United States. He also operates the Websites entirely from Russia. He has never had employees anywhere in the United States or owned or leased real estate anywhere here. Neither has he held a bank account or paid taxes in the United States.

22

Kurbanov has never been to Virginia or anywhere else in the United States…

*UMG Recordings*, 963 F.3d at 349. Despite this, this Court held that the defendant purposefully availed himself of Virginia because his websites received significant visitor traffic from Virginia, which allowed him to earn revenue from advertising that was geographically catered to the location of the visitors, and because he collected data from those visitors. *See id.* at 353–55.

To a much greater degree than the defendant in *UMG Recordings*, Bloomingdale's directly and purposefully availed itself of the privilege of conducting its business in the state of Maryland. Bloomingdale's knowingly and intentionally targeted the Maryland market via its brick-and-mortar store in Maryland and its direct commercial interactions with Maryland residents, both in person and on Bloomingdales.com. *See, e.g.*, *BohoBlu, LLC v. BluBoho.com Inc.*, 2024 WL 1364755 at *8 (W.D.N.C. Mar. 1, 2024) (finding the exercise of specific jurisdiction proper and online website sales were not "one-off" sales where defendant operated a website and brick-and-mortar and "engaged in 69 total transactions with shipping to both businesses and consumers with [forum state] addresses."); *Collier v. Land & Sea*

23

*Restaurant Co., LLC*, 2014 WL 5254916, at *8 (W.D. Va. Oct. 15, 2014) (concluding that "even if [defendant] did not specifically target [forum state] customers (as opposed to customers in other states), [defendant] in fact sold to a number of [forum state] customers and thus purposefully availed itself of the privilege of selling products in [the forum state], including shipping those products directly to [the forum state].").

The district court's error on this prong is attributable to its failure to fully analyze Bloomingdale's extensive contacts with Maryland, both via Bloomingdales.com and its physical location in Maryland. As in *UMG Recordings*, "this is not a situation where a defendant merely made a website that happens to be accessible in [the forum]." *UMG Recordings*, 963 F.3d at 355. As shown already, Bloomingdale's does regular and substantial retail business in Maryland, has more extensive contacts with the forum, and has a more direct stream of revenue flowing from consumers in the forum than the defendant did in *UMG Recordings*. But even if Bloomingdale's physical contacts with Maryland were ignored, its direct internet transactions in Maryland by

24

themselves exceed the connections the defendant had with Virginia in

*UMG Recordings*.

> **1.    Bloomingdale's internet-based availment of Maryland satisfies this Court's test in *ALS Scan*, even if Bloomingdale's department store location in Maryland were ignored.**

"The Supreme Court has not definitively answered how a

defendant's online activities translate into contacts for purposes of the

minimum contacts analysis." *Plixer Int'l v. Scrutinizer GmbH*, 905 F.3d

1, 9 (1st Cir. 2018); *see also Walden v. Fiore*, 571 U.S. 277, 290 n.9,

(2014) ("leav[ing] questions about virtual contacts for another day").

This Court has, however, "adopt[ed] the model developed in *Zippo*

*Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)."

*ALS Scan v. Digital Service Consultants, Inc.*, 293 F.3d 707, 713 (4th

Cir. 2002). "In *Zippo*, the court concluded that 'the likelihood that

personal jurisdiction can be constitutionally exercised is directly

proportionate to the nature and quality of commercial activity that an

entity conducts over the Internet.'" *ALS Scan*, 293 F.3d at 713 (quoting

*Zippo*, 952 F. Supp. at 1124).

Pursuant to the *Zippo* analysis, this Court "recogniz[es] a 'sliding

scale' for defining when electronic contacts with a State are sufficient,"

distinguishing between websites that are interactive, semi-interactive, or passive. *ALS Scan*, 293 F.3d at 713–14. Specifically:

> When a defendant runs an interactive site, through which he enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, he can properly be haled into the courts of that foreign jurisdiction. If, by contrast, the defendant's site is passive, in that it merely makes information available, the site cannot render him subject to specific personal jurisdiction in a foreign court. Occupying a middle ground are semi-interactive websites, through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs.

*Carefirst*, 334 F.3d at 399 (internal citations and quotation marks omitted).

This Court therefore held that a state may, consistent with due process, exercise judicial power over a person who: "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, … (3) [when] that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. Each of these three factors is satisfied here.

26

There is no dispute that Bloomingdale's: (1) directs electronic activity into Maryland via Bloomingdales.com; (2) with the manifest intent of engaging customers and potential customers located in Maryland for commercial profit; and (3) secretly wiretaps those customers and potential customers who visit Bloomingdales.com while in Maryland, without their consent, giving rise to a cognizable cause of action under Maryland statutory and common law. JA6, JA10–11, JA15–16, JA22–27.

These facts are enough by themselves to satisfy the purposeful availment prong, even without reference to Bloomingdale's extensive physical contacts with Maryland via its Maryland department store. *See UMG Recordings*, 963 F.3d at 353 (finding the exercise of personal jurisdiction proper and purposeful availment demonstrated based on the volume of unique website visitors from the forum state and defendant's collection for profit of website visitors' personal data in the forum state); *Pittsburgh Terminal Corp.*, 831 F.2d at 525 (physical presence in the forum not required when defendant purposefully directed activity into the forum and the claim relates to that activity); *AMB Media, LLC v. OneMB, LLC*, 2024 WL 2052151, at *4 (6th Cir.

27

May 8, 2024) ("[u]se of an interactive website to sell products into a forum creates jurisdiction not because of any internet-specific rules, but because that course of conduct pairs a willingness to sell into the forum with regular sales—features that have long constituted purposeful availment."); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357–58 (11th Cir. 2013) (finding purposeful availment established by defendant's use of a fully interactive, commercial website that was used to receive orders from forum residents, leading the defendant to ship products into the forum); *Center for Community Self-Help v. Self-Financial, Inc.*, 2023 WL 1779831 at *6 (M.D.N.C. Feb. 6, 2023) (finding it "implausible" that a defendant that operates principally online nationwide via a highly interactive website "achieved 90,000 [forum state] customers *without* directing electronic activity into [forum state.]") (emphasis in original).

Bloomingdales.com is not a "passive" website on the *Zippo* sliding scale. Rather, it is a highly interactive website, because it allows Hernandez and putative Maryland class members to browse merchandise, place orders, purchase products, and have those products delivered in Maryland at the completion of the sales transactions on

28

Bloomingdales.com, either to their home addresses in Maryland or to Bloomingdale's department store in Chevy Chase, Maryland. JA10–11. *See Savvy Rest, Inc. v. Sleeping Organic, LLC*, 2019 WL 1435838, at *5 (W.D. Va. Mar. 29, 2019) (finding exercise of personal jurisdiction proper where defendant's commercially interactive website allowed orders to be placed by customers and defendant conducted sales transactions through the website).

Indeed, Bloomingdale's has engaged in continuous in-person and online sales transactions with customers who Bloomingdale's knew wanted to receive their products in Maryland, which has resulted in substantial sales revenue for Bloomingdale's. In the district court, the parties did not develop discovery regarding the details of Bloomingdale's sales volume in Maryland, but its continuous operation of a luxury goods department store there, coupled with its online platform for direct or store-integrated sales, allows the reasonable inference that its revenues in Maryland far exceed the minimal amounts other courts have found sufficient. *Id.* (finding exercise of specific personal jurisdiction proper where defendant sold as few as 80 mattresses online to residents of Virginia and generated as little as

29

$200,000 in gross sales online); *see also AMB Media, LLC*, 2024 WL 2052151, at *1 (purposeful availment found despite the defendant having only 59 customers worth $16,862 of revenue in the forum); *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022) (single sale into the forum was sufficient to show purposeful availment despite defendant's lack of physical contacts with the forum; having developed an online store to invite orders from Illinois, defendant "cannot now point to its customers in Illinois and tell [the court] 'it was all their idea.'") (citation and quotation marks omitted); *Louis Vuitton Malletier*, 736 F.3d at 135–57 (specific sales volume not required to show purposeful availment when the plaintiff alleged at least one claim-related sale into the forum).

As set forth in Hernandez's amended complaint, Bloomingdale's knowingly engages with Maryland putative class members for profit. *See generally* JA9–11, JA23. These actions have resulted in the sale of Bloomingdale's products directly to Maryland putative class members on a regular basis via Bloomingdales.com and its department store, sufficient to establish Bloomingdale's purposeful availment of the Maryland retail market and demonstrate that Bloomingdale's could

30

reasonably anticipate facing claims in Maryland related to its business activity there. *See, e.g.*, *Toys "R" Us, Inc. v. Step Two S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) ("If a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied."); *Collier*, 2014 WL 5254916, at *8; *Savvy Rest*, 2019 WL 1435838, at *5 (finding that even if defendant did not specifically target forum state customers, it purposefully availed itself of the privilege of conducting business in the state).

The purposeful availment prong is as close as it comes to a "slam dunk" in this case due to Bloomingdale's knowing and intentional physical and online retail presence in Maryland, and its regular sales in Maryland through both electronic and brick-and-mortal channels. The district court's finding to the contrary was error.

### B. Hernandez's claims arise directly out of Bloomingdale's intentional, regular business activities in Maryland.

To exercise personal jurisdiction over a non-resident defendant, the asserted claims must also have "such a connection with the forum state that it is fair for the defendant to defend itself in that state." *CFA*

31

*Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n. 15 (4th Cir. 2009) (citations omitted). Put another way, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum state and is therefore subject to the State's regulation." *Ford Motor*, 592 U.S. at 359–60 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 264 (2017)).

Once again, when this prong is properly analyzed, this case presents a slam dunk in favor of personal jurisdiction in Maryland. Bloomingdale's wiretapped Hernandez in Maryland, and that is what her claims are about, but the district court ignored the straightforward locus of her claims. Hernandez is not complaining about Bloomingdale's conduct in other places. Her claim is tethered to Bloomingdale's actions within, and directed into, the physical territory of Maryland, and nowhere else.

Indeed, the case is *entirely* about Bloomingdale's transmission of interceptive software *onto computers in Maryland*, and the electronic wiretapping that resulted *on computers in Maryland*, which violated Maryland's wiretapping and privacy laws. The Maryland-specific

32

connection between Hernandez's claims and Bloomingdale's actions is plainly established in Hernandez's complaint. *See, e.g.*, JA8–12, JA23, JA28, JA31 (specifically limiting the scope of the claims to Bloomingdale's wiretapping of Hernandez and class members within Maryland).[3]

As a result, Hernandez's claims arise out of and relate to Bloomingdale's business activities in Maryland, and nowhere else. *See UMG Recordings*, 963 F.3d at 354 (finding plaintiff's claims arose out of defendant's forum state activities where defendant "made two *globally accessible websites* and [forum state] visitors used them for alleged music piracy.") (emphasis added); *Louis Vuitton Malletier*, 736 F.3d at 1355–56 (relatedness prong satisfied where defendant sold the claim-related product into the forum); *BohoBlu*, 2024 WL 1364755 at *9

---

[3] *E.g.*, JA8 at ¶ 9 ("bring[ing] this action individually and on behalf of a class of all persons in Maryland whose Website Communications were intercepted through Bloomingdale's procurement of Session Replay Providers and use of Session Replay Code embedded on the webpages of www.bloomingdales.com"); JA9 at ¶ 16 (alleging that Bloomingdale's "intercept[ed] and collect[ed]—directly or through the use of an undisclosed third-party Session Replay Provider—real-time data from website sessions initiated by Maryland citizens, including Plaintiff, while located in Maryland, and the claims alleged herein arise from those activities.").

33

(finding plaintiff's claims arose out of defendant's directed online website activity to the forum state); *Savvy Rest*, 2019 WL 1435838, at *6 (concluding that plaintiff's false advertising claim was based, at least in part, on false or misleading representations present on the website that defendant used to sell mattresses in the forum state, thereby establishing that plaintiff's claim arose out of defendant's forum-related activities).

The connections between Bloomingdale's activities, Maryland, Hernandez, and Hernandez's claims are stronger than the connections present in controlling Supreme Court cases affirming the exercise of specific jurisdiction, such as *Ford Motor* and *Keeton*.

In *Ford Motor*, there was not a strict "causal connection" between the defendant's conduct and the claims because *every* action relevant to the claims that Ford took leading up to the vehicle accidents occurred outside of the forum, and the plaintiffs and Ford did not transact with each other: the design, manufacture, and initial sales of the accident vehicles all happened entirely in states other than Montana and Minnesota. *Ford Motor*, 592 U.S. at 357–58. The specific accident vehicles in question only made their way to the forum states after

34

secondary market sales and the transportation of the vehicles into those states by persons other than Ford. *Id.* Unlike here, the defendant and the plaintiffs in *Ford* never had any direct contact within the forums. Nevertheless, the Supreme Court found the plaintiffs' claims sufficiently related to Ford's voluntary contacts with the forums. *See id.* at 364–68.

Similarly, in *Keeton*, the defendant's printing of an allegedly libelous article about a New York woman did not occur in New Hampshire, the forum state; instead, the defendant's regular shipments of several thousand magazines per month into the state (including issues containing the libel) served as its only relevant contacts with the forum. *Keeton*, 465 U.S. at 772–75. Even though the plaintiff did not reside there, the combination of the defendant's continuous exploitation of the New Hampshire market and the fact that the plaintiff suffered reputational injury there from the defendant's regular business activities sufficed to justify personal jurisdiction. *Id.* at 779–80 ("But respondent is carrying on a 'part of its general business' in New Hampshire, and that is sufficient to support jurisdiction when the cause

of action arises out of the very activity being conducted, in part, in New Hampshire.").

There are no coherent reasons under the relatedness prong why the exercise of specific personal jurisdiction was proper in *Ford Motor* and *Keeton*, but would not be proper over Bloomingdale's in Maryland for these claims. Hernandez's claims arose from Bloomingdale's transmission of spyware directly onto her browser *while she was in Maryland*. That is a more direct claim-causing contact between the plaintiff and the defendant within the forum than was present in either *Ford Motor* or *Keeton*.

The fact that the claim-causing contacts were electronic and sent over the internet does not compel a different outcome. This Court has specifically set forth the test for this context: a person who directs *electronic activity* into a state and manifests an intent to engage in business or other interactions in the state is subject to specific personal jurisdiction when "that [electronic] activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. That is exactly what Bloomingdale's did here.

36

Bloomingdale's chose Maryland as a specific place where it wanted to do business, fully knowing and intending that its website would be used routinely by Marylanders to facilitate their patronage of Bloomingdale's, online and in person. Bloomingdale's cannot be surprised that its deliberate transmission of spyware into Maryland while transacting business there has led to claims by Marylanders who believe Bloomingdale's violated their rights to privacy while they were using their computers in the state. Under *Ford Motor*, *Keeton*, and *ALS Scan*, Hernandez's claim sufficiently arises out of Bloomingdale's contacts with Maryland.

Accordingly, the district court's conclusion that Hernandez's claims did not arise out of or relate to any of Bloomingdale's contacts with Maryland was plain error.

## II. The district court misapplied this Court's decision in *Fidrych* and erred in relying on a non-binding First Circuit case that was wrongly decided.

The district court's decision not to exercise personal jurisdiction over Bloomingdale's here primarily rested on its improper reliance on, and misapplication of, two opinions: *Fidrych v. Marriott Int'l., Inc.*, 952 F.3d 124 (4th Cir. 2020); and *Rosenthal v. Bloomingdales.com, LLC*, 101

37

F.4th 90 (1st Cir. 2024). The district court erred because *Fidrych* is factually distinguishable, and *Rosenthal* was wrongly decided; the First Circuit did not follow Supreme Court precedent, and its heightened test for purposeful availment in *Rosenthal* is incompatible with this Court's holdings in *ALS Scan* and *UMG Recordings*.

### A. The district misapplied *Fidrych*, ignoring that *Fidrych* involved claims arising exclusively out of events in Italy, not the forum state.

The district court misapplied the analysis and holding of *Fidrych* to this case because the district court failed to recognize the critical, dispositive factual differences between *Fidrych* and Hernandez's claims. The plaintiff in *Fidrych* was a South Carolina resident who was physically injured when a shower door shattered in Milan, Italy, at a hotel operated by a franchisee of Marriott International. *Fidrych*, 952 F.3d at 129. The plaintiff had not booked the hotel room himself from South Carolina, nor did he allege that he even researched the Milan hotel while in South Carolina. *Id.*

Unsurprisingly, this Court held that the plaintiff failed to establish the "relatedness" prong of the specific jurisdiction test, because Marriott's activities in South Carolina had "nothing to do" with

the plaintiff's claims, which were about "Bud Fidrych's injury in a Marriott-affiliated hotel in Milan." *Id.* at 139; *id.* at 140 ("[N]one of the wrongs Marriott is alleged to have committed took place in South Carolina … Accordingly, one of the most frequent bases for the exercise of specific jurisdiction—an activity by the defendant in the forum state—is absent in this case.").

As explained above, Hernandez's claims are readily distinguishable here because they are entirely about Bloomingdale's wiretapping of her while she was *in Maryland*, the forum. That is a categorical and dispositive distinction between Hernandez's basis for jurisdiction and the fact pattern in *Fidrych*, which featured no connection between the claim-related events and South Carolina. Because the *Fidrych* plaintiff's injuries all occurred in Italy, his arguments for personal jurisdiction over Marriott in South Carolina depended exclusively on the *accessibility* of Marriott's website from South Carolina. *Id.* at 141 ("[W]e are again left with Marriott's operation of its website as the only arguable jurisdictional hook connecting this case to South Carolina."). But the plaintiff's physical injury in Italy did not arise from or relate to his interacting with the

39

website in South Carolina, so this Court's determination that Marriott's website, *standing alone*, could not serve as a basis for personal jurisdiction in South Carolina must be understood in that unique context.

By contrast, Hernandez alleges that Bloomingdale's wiretapped her while she was in Maryland. JA8–12, JA23 JA28. The reasons this Court discounted the jurisdictional relevance of Marriott's website in *Fidrych* do not apply here because here Bloomingdale's purposefully directed the claim-related conduct into Maryland and caused Hernandez's claim-related harm *in Maryland*—this is the "activity by the defendant in the forum" that was completely missing in *Fidrych*. Unlike in *Fidrych*, the Bloomingdales.com website and its functionality within the forum is central to the dispute: Bloomingdale's transmission of spyware onto Hernandez's computer in Maryland caused the interception of her Maryland-based communications and disclosure of them to third parties, creating the basis for Hernandez's wiretapping and invasion of privacy claims under Maryland law. That connection between the spyware launched from the website and Hernandez's claims satisfies this Court's test for determining whether electronic

40

activity directed into a forum by an interactive website is sufficient to establish specific personal jurisdiction. *See ALS Scan*, 293 F.3d at 714; *see also UMG Recordings*, 963 F.3d at 353–54.

Finally, the district court improperly relied on the *Fidrych* court's finding that "the level of interactivity on Marriott International's website was not enough to make the website a sufficient basis to support the exercise of specific personal jurisdiction." JA46, JA50–51. As shown above, Bloomingdales.com is a highly interactive website on the *Zippo* scale, which makes the exercise of personal jurisdiction proper here, particularly in light of the fact that Hernandez's claims arise directly out of the website's transmission of spyware onto her computer, which allowed Bloomingdale's and third parties to surreptitiously intercept her communications in Maryland without Hernandez's consent. *See, e.g.*, *UMG Recordings*, 963 F.3d at 353–54; *NBA Properties*, 46 F.4th at 624–26; *Louis Vuitton Malletier*, 736 F.3d at 1357–58; *Toys "R" Us*, 318 F.3d at 453–54; *Center for Community Self-Help*, 2023 WL 1779831 at *6; *BohoBlu,* 2024 WL 1364755 at *8.

For those reasons, the district court's reliance on *Fidrych* was misplaced.

41

**B.     The First Circuit's holding in *Rosenthal* that Bloomingdale's did not purposefully avail itself of Massachusetts should not be imported to this case.**

The district court also erred in relying on the First Circuit's

holding in *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90 (1st Cir.

2024). In *Rosenthal*, the First Circuit held that Bloomingdale's did not

purposefully avail itself of Massachusetts, even though Bloomingdale's

operates a brick-and-mortar department store there, as it does in

Maryland. 101 F.4th at 96 (noting that the court would "begin–and

end–our examination" on the purposeful availment prong).

The First Circuit got to that inexplicable conclusion by conflating

the two prongs of purposeful availment and relatedness, and by

arbitrarily requiring evidence of *intentional targeting of the plaintiff* by

the defendant. Rather than properly assessing "purposeful availment"

by examining facts relevant to Bloomingdale's exploitation of the

Massachusetts retail market, the First Circuit turned its analysis to

whether Bloomingdale's knew it was specifically targeting spyware

towards the plaintiff himself. *Id.* at 97 (stating that plaintiff was

required to provide affirmative proof that "Bloomingdales *knew* that it

was targeting him in Massachusetts.") (emphasis in original); *id.* at n.1

42

("What is crucially lacking here is that Bloomingdales had the specific knowledge and intent that it was operating its website and its [spyware] on the plaintiff's Massachusetts-based browser when it allegedly gave rise to the injuries in the complaint.").

This overly exacting standard bears no resemblance to the traditional purposeful availment endorsed by the Supreme Court, which focuses on the defendant's intent to *enter the forum*—not intent to target an individual plaintiff in the forum. *See Ford Motor*, 592 U.S. at 359–60. The traditional tests applied by the Supreme Court and this Court do not have a requirement that a defendant engaging in general business activities in a forum specifically direct contact toward any particular person in the forum, as the *Rosenthal* court demanded.

If there were such an individualized targeting requirement, the *Ford Motor* plaintiffs would have lost because Ford did not sell them the accident-involved vehicles in the forum states. *Id.* at 366; *see also id.* at 362 ("we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.,* proof that the plaintiff's claim came about because of the defendant's in-state conduct."). But the *Ford Motor*

43

plaintiffs did not lose, because the Supreme Court's test does not require targeting of the sort demanded by the First Circuit.[4]

The First Circuit's imposition of a heightened requirement for individualized targeting by Bloomingdale's reflects a mistaken overreliance on the factors developed for cases involving intentional tortious conduct directed into a forum by defendants that otherwise did not demonstrate sufficient traditional availment of a forum's market. *See, e.g.*, *Young v. New Haven Advoc.*, 315 F.3d 256, 262 (4th Cir. 2002) (discussing and applying the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), to a libel action brought by a Virginia prison warden against Connecticut-based defendants).

Resorting to a *Calder*-like analysis and its emphasis on "express aiming" is not necessary here because Bloomingdale's extensive

---

[4] Another Supreme Court precedent illustrating the absence of any geo-specific individual targeting requirement is *Keeton*, because the plaintiff in that case did not even reside in New Hampshire, so the defendant publisher could not have known or intended that its actions would harm the plaintiff in the forum to a greater degree than anywhere else. *Keeton*, 465 U.S. at 780 ("It is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire. But that will be true in almost every libel action brought somewhere other than the plaintiff's domicile. There is no justification for restricting libel actions to the plaintiff's home forum.").

physical and electronic contacts with Maryland readily satisfy the traditional purposeful availment and relatedness prongs, as explained above. Bloomingdale's "continuously and deliberately" exploited a market for its goods and services in Maryland as "part of its general business," *see Keeton*, 465 U.S. at 779–81, and Hernandez's claims arise directly out of Bloomingdale's activities in Maryland because that is where Hernandez, Bloomingdale's, and the claim-generating activity all came together. That is more than sufficient to justify the exercise of specific jurisdiction in this case.

The First Circuit's approach to specific jurisdiction in *Rosenthal* is also at odds with the simple three-part test this Court adopted in *ALS Scan*, which requires only that: (1) the defendant directed electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity created, in a person within the State, a potential cause of action cognizable in the State's courts. *ALS Scan*, 293 F.3d at 714. This test does not include the kind of extraordinary *mens rea* element the First Circuit imposed, which required the plaintiff to "affirmatively prove

that Bloomingdales *knew* that it was targeting [plaintiff] in

Massachusetts." *Rosenthal*, 101 F.4th at 97.

The *Rosenthal* opinion also clashes directly with this Court's

decision in *UMG Recordings*. In that case, this Court's analysis of the

purposeful availment prong was properly focused on the defendant's

various forms of engagement with Virginia, utilizing the nonexclusive

factors, such as whether the defendant maintained offices or agents in

the state; whether the defendant owned or leased property in the state;

whether the defendant deliberately engaged in business transactions in

the state, etc. *See UMG Recordings*, 963 F.3d at 352 (quoting *Sneha*

*Media & Entm't, LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192,

198–99 (4th Cir. 2018)). This Court did not require the plaintiffs to

prove the defendant intended to harm them in Virginia, and it would

have been unlikely they could make such a showing because their

claims were not about the defendant's interactions with the plaintiffs at

all; the plaintiffs were record labels that alleged the defendant's website

offered a technology that *other people* could use to engage in music

piracy by ripping audio tracks off of websites such as YouTube. *See*

*UMG Recordings*, 963 F.3d at 348–49.

46

For these reasons, the First Circuit's reasoning in *Rosenthal* was flawed and is contrary to the Supreme Court's and this Court's precedents regarding how the purposeful availment prong should be analyzed. Under the tests used by the Supreme Court and this Circuit, Bloomingdale's purposefully availed itself of Maryland, and Hernandez's claims arise directly out of Bloomingdale's intentional activity directed into Maryland. That is all that is required. The district court's dismissal of the case for lack of specific jurisdiction in reliance on the First Circuit's decision in *Rosenthal* was therefore error.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Hernandez requests that this Court reverse the district court's judgment and order of July 25, 2024, dismissing her claims for lack of personal jurisdiction over Bloomingdale's.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because this case raises important questions about the proper application of personal jurisdiction principles to claims involving internet-based privacy torts.

Dated: March 7, 2025          Respectfully submitted,

By:     /s/ *Jamisen A. Etzel*

Jamisen A. Etzel
LYNCH CARPENTER, LLP
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
jamisen@lcllp.com
412-322-9243

James J. Pizzirusso
Nicholas U. Murphy
HAUSFELD LLP
888 16th Street N.W., Ste. 300
Washington, DC 20006
jpizzirusso@hausfeld.com
nmurphy@hausfeld.com
202-540-7200

Steven M. Nathan
HAUSFELD LLP
33 Whitehall Street, 14th Flr.
New York, NY 10004
snathan@hausfeld.com
646-357-1100

Jonathan M. Jagher
FREED KANNER LONDON &
MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
jjagher@fklmlaw.com
610-234-6770

*Attorneys for Plaintiff-Appellant*

48

## **Certificate of Compliance**

This brief contains 8,357 words, excluding the items exempted by Fed. R. App. P. 32(f). This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i).

The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Dated: March 7, 2025          Respectfully submitted,

By:    /s/ *Jamisen A. Etzel*

Jamisen A. Etzel
LYNCH CARPENTER, LLP
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
jamisen@lcllp.com
412-322-9243

*Attorney for Appellant*

49